# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK RISSER,** | : | CIVIL ACTION NO. 1:17-CV-357 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **STEELTON-HIGHSPIRE SCHOOL DISTRICT, DR. ELLEN CASTAGNETO, LISA CRUM, and RACHEL MONTIEL,** | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Mark Risser ("Risser") commenced this action against his employer and several former supervisors asserting claims of discrimination, harassment, hostile work environment, and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. AND CONS. STAT. ANN. §§ 951-963. (See Doc. 13). Defendants Steelton-Highspire School District (the "School District"), Dr. Ellen Castagneto ("Castagneto"), Lisa Crum ("Crum"), and Rachel Montiel ("Montiel") move to dismiss Risser's amended complaint in part, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 24).

## I.     Factual Background & Procedural History

The School District hired Risser on August 12, 2013 to teach fourth grade at Steelton-Highspire Elementary School. (Doc. 13 ¶¶ 9, 11, 20). Risser notified the

School District of his disability[1] during the hiring process. (Doc. 12 ¶¶ 24-25). At the time of Risser's hire, Castagneto was the superintendent for Steelton-Highspire School District, Crum was principal of the elementary school, and Montiel was the assistant principal of the elementary school. (Doc. 13 ¶¶ 6-8). Montiel replaced Crum as principal in September of 2014. (Id. ¶ 20).

Several days before the start of classes, the School District informed Risser that the fourth grade position was being filled by another teacher and that he would now be teaching either second or sixth grade. (Id. ¶ 13). In September of 2013, Risser personally notified Principal Crum and Assistant Principal Montiel of his disability and took time off work for treatment. (Doc. 12 ¶¶ 26-28). Risser returned to work in early November of 2013. (Id. ¶ 28). The School District required Riser to undergo a fitness-for-duty evaluation before returning to the classroom. (Id. ¶ 30). The evaluation occurred five months later, in April of 2014. (Id. ¶ 31). In the interim, Risser served in other capacities including cafeteria duty and various administrative tasks. (Id. ¶ 33(d)). The evaluation determined that Risser was fit for duty but recommended a brief transition period with a gradual return to full-time status. (Id. ¶ 32).

Upon his return to work in November of 2013, the School District allegedly engaged in "regular and intentional discrimination against and harassment of"

---

[1] The factual background that follows derives primarily from Risser's partially redacted amended complaint. (See Doc. 13). The court cites to this filing in the interest of protecting Risser's privacy. Citations to the unredacted amended complaint filed under seal are used sparingly. (See Doc. 12). The redacted material relates to the nature of Risser's disability, a detailed discussion of which is not necessary to disposition of the instant motion. (See Docs. 24, 25, 28).

2

Risser because of his disability. (Doc. 13 ¶ 33). The School District purportedly initiated a series of "unsupported and flawed" classroom observations and evaluations of Risser. (Id. ¶ 33(a)). Principal Crum observed Risser teaching a second grade class on June 2, 2014. (Id. ¶ 33(e)). Risser had no prior experience teaching second grade and was given no time to prepare. (Id. ¶ 33(e)-(f)). Unsurprisingly, Crum assigned him an "unsatisfactory" teacher observation score. (Id. ¶ 33(e)).

Despite this negative evaluation, and despite fourth grade teacher vacancies, defendants subsequently notified Risser that he would be teaching second grade for the 2014-2015 school year. (Id. ¶ 40). An additional performance evaluation ensued. In his November 20, 2014 classroom evaluation, Risser received a "proficient" score in 19 of 21 classroom observation components. (Id. ¶ 33(p)). Risser filed his first administrative charge against the School District with the Pennsylvania Human Relations Commission ("PHRC") on November 25, 2014. (Doc. 24-2 at 2-9).[2] This administrative charge addressed defendants' alleged discriminatory conduct beginning in August of 2013. (Id. at 3).

---

[2] The court is generally limited in its review to the allegations contained in the complaint, any exhibits attached thereto, and matters of public record. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). However, the court may consider documents "integral to or explicitly relied upon in the complaint" without converting the motion into one for summary judgment. Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). Thus, under this narrow exception, the court may consider the scope of administrative charges referenced in Risser's complaint, (Doc. 13 ¶¶ 79, 83, Ex. A), and attached to defendants' brief, (see Doc. 24-2).

3

Risser now alleges that defendants initiated an investigation against him in retaliation for filing this initial administrative complaint. (Doc. 13 ¶ 81). Superintendent Castagneto's investigation included teaching evaluations and interviews of students and faculty. (Id. ¶ 33(k), 33(o)-((n)). Risser alleges that contemporaneous with the investigation, Principal Montiel harassed him regarding his classroom set-up and lesson plans and conducted sham observations designed to "intimidate and harass" him. (Id. 13 ¶ 33(j)). Risser also avers that defendants' conduct forced him to resign from a head junior varsity coaching position at a local high school and cost him other teaching opportunities. (Id. ¶¶ 49-50, 59, 74, 89).

Castagneto conducted a mid-year evaluation of Risser on January 19, 2015 and found that Risser "needs improvement." (Id. ¶ 33(o)). Castagneto placed Risser on suspension without pay as a result of her investigation. (Id. ¶¶ 34, 41, 45). Risser filed his second administrative charge with the PHRC on March 26, 2015, again naming only the School District as a respondent. (Doc. 24-2 at 10-15). Following additional negative evaluations, Castagneto informed Risser that she was recommending his termination. (Doc. 13 ¶¶ 43, 45). The School District terminated Risser's employment on October 26, 2015. (Id. ¶ 46). Risser filed his third administrative charge with the PHRC on March 24, 2016. (Doc. 24-2 at 16-21).

Risser filed a grievance regarding his termination pursuant to a collective bargaining agreement. (Doc. 13 ¶ 56). An arbitrator reinstated him with back pay and benefits. (Id.) On September 12, 2016, the board of directors reinstated Risser "under protest" in light of the arbitrator's decision. (Id. ¶ 57). Risser avers that defendants thereafter engaged in a concerted effort to obtain Risser's resignation or

4

create false bases for his dismissal. (Id. ¶ 48). As an example, Risser alleges that defendants deliberately disclosed his disability to students and faculty at a school assembly on March 2, 2017. (Id. ¶ 85).

The United States Equal Employment Opportunity Commission ("EEOC") issued Risser right-to-sue letters for each of his three administrative complaints on December 2, 2015, February 15, 2017, and February 22, 2017, respectively. (Id. at Ex. A). Risser commenced the instant action on February 27, 2017, (Doc. 1), subsequently filing an amended complaint, (Docs. 12, 13), on March 28, 2017. Risser advances claims of disability discrimination, harassment, and hostile work environment under the ADA (Count I) and the PHRA (Count II) as well as a claim for retaliation under both statutes (Count III). (Doc. 13 at 4, 13, 15).[3] Defendants move to dismiss the amended complaint in part under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 24). The motion is fully briefed and ripe for disposition.

---

[3] The amended complaint styles the retaliation claim as "Count IV." (Doc. 13 at 15). The court will refer to the retaliation claim as Count III for clarity since only three counts are alleged.

## II. <u>Legal Standard</u>[4]

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings, Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips</u>, 515 F.3d at 232 (alteration in original) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must

---

[4] Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that Risser failed to exhaust administrative remedies as to certain defendants. (Doc. 25 at 6). The Third Circuit has clarified that "questions of whether a plaintiff has timely exhausted administrative remedies in Title VII actions are in the nature of statutes of limitation" and do not affect the district court's subject matter jurisdiction. <u>Francis v. Mineta</u>, 505 F.3d 266, 268 (3d Cir. 2007) (internal quotations omitted) (quoting <u>Robinson v. Dalton</u>, 107 F.3d 1018, 1021 (3d Cir. 1997)); <u>see also</u> <u>Wilson v. MVM, Inc.</u>, 475 F.3d 166, 174 (3d Cir. 2007) (citing <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982)); <u>but see</u> <u>Vnuk v. Berwick Hosp. Co.</u>, No. 3:14-CV-01432, 2015 WL 4984974, at *3 (M.D. Pa. Aug. 19, 2015) (quoting <u>First Jersey Sec., Inc. v. Bergen</u>, 605 F.2d 690, 700 (3d Cir. 1979)) (citing <u>Rosetsky v. Nat'l Bd. of Med. Examiners of U.S., Inc.</u>, 350 F. App'x 698, 703 (3d Cir. 2009) (nonprecedential)). Therefore, Rule 12(b)(6) is the proper vehicle for defendants' exhaustion arguments.

plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 252-53, but leave is broadly encouraged "when justice so requires." FED. R. CIV. P. 15(a)(2).

## III. Discussion

Defendants assert three principal arguments in support of their motion to dismiss: *first*, that Risser failed to exhaust administrative remedies under the ADA and PHRA; *second*, that defendants Castagneto, Crum, and Montiel cannot be held liable in their individual capacities; and *third*, that Pennsylvania's high public

7

official immunity doctrine shields Castagneto from suit in her official capacity as superintendent of the School District.

As a threshold matter, defendants contend that the amended complaint is properly read as bringing suit against Castagneto, Crum, and Montiel in their official capacities alone. (Doc. 25 at 11, 15-16). Complaints need not state explicitly whether individual defendants are sued in their official or individual capacities. See Gregory v. Chehi, 843 F.2d 111, 119 (3d Cir. 1988). When a complaint is unclear on this issue, courts are instructed to look to both the complaint and the "course of proceedings" to determine the liability the plaintiff seeks to impose. Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990) (citing Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)); Gregory, 843 F.2d at 119. Risser's pleading does not explicitly state whether Castagneto, Crum, and Montiel are sued in their individual capacities. However, Risser correctly observes that claims against defendants in their official capacities are redundant when, as here, the employing entity is also sued. (See Doc. 26 at 22-23). The court will construe Risser's amended complaint as asserting claims under the ADA and PHRA against defendants in their individual capacities. The court will construe Risser's amended complaint as asserting claims under the ADA and PHRA against defendants in their individual capacities.

**A.     Exhaustion of Administrative Remedies Under the ADA and PHRA**

The ADA adopts the enforcement procedures of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117. Thereunder, a plaintiff seeking redress for alleged discrimination must exhaust all administrative remedies before seeking relief in federal court. Watson v. Eastman Kodak Co., 235 F.3d 852, 854 (3d Cir. 2000). A

complainant must file a charge of discrimination within 180 days after an allegedly unlawful employment practice occurs. 42 U.S.C. § 2000e-5(e)(1). This deadline extends to 300 days if a complainant files similar charges in a state with a parallel agency such as the PHRC. Id.; Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013). If the EEOC fails to resolve the matter within 180 days after investigating the charges, the EEOC notifies the complainant with a right-to-sue letter. Burgh v. Borough Council, 251 F.3d 465, 469-70 (3d Cir. 2001) (citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). Receipt of a right-to-sue letter is a prerequisite to filing a private action. Id. (citations omitted). Courts analyze disability discrimination claims under the PHRA and the ADA coextensively. Capps v. Mondelez Glob., LLC, 847 F.3d 144, 150 n.1 (3d Cir. 2017). Accordingly, the following ADA analysis applies equally to Risser's PHRA claims unless otherwise noted.

### 1. *Exhaustion as to Montiel*

A complainant may ordinarily only bring an action in federal court against a party previously named in the relevant administrative charge. Schafer v. Bd. of Pub. Educ., 903 F.2d 243, 252 (3d Cir. 1990) (citing 42 U.S.C. § 2000e–5(f)(1)); Glus v. G.C. Murphy Co., 562 F.2d 880, 885 (3d Cir. 1977) ("Glus I") (collecting cases). This exhaustion rule serves two purposes: to notify the charged party, and to facilitate resolution without the need for formal litigation. Glus I, 562 F.2d at 888. The Third Circuit recognizes a narrow exception to this rule, which excuses technical noncompliance when an unnamed party receives adequate notice and has a shared commonality of interest with the named parties. Schafer, 903 F.2d at 252 (citing

9

Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir. 1980) ("Glus II"), vacated on other grounds, 451 U.S. 935 (1981)).

Courts considering the notice requirement have concluded that when a plaintiff fails to name a party in the body of an administrative charge, that party is not on notice that they could be sued in their individual capacity. Jankowski v. Fanelli Bros. Trucking Co., No. 13-2593, 2014 WL 690861, at *4-8 (M.D. Pa. Feb. 24, 2014); Hills v. Borough of Colwyn, 978 F. Supp. 2d 469, 480-81 (E.D. Pa. 2013) (collecting cases); Kunwar v. Simco, 135 F. Supp. 2d 649, 654 (E.D. Pa. 2001); but see Lowenstein v. Catholic Health East, 820 F. Supp. 2d 639, 642 (E.D. Pa. 2011). When an unnamed party is aware of the charge's existence solely by virtue of her employment position, the party is only on notice that she may be sued in her official capacity. Hills, 978 F. Supp. 2d at 480-81; cf. Diep v. Southwark Metal Mfg. Co., No. 00-6136, 2001 WL 283146, at *4 (E.D. Pa. Mar. 19, 2001).

A plaintiff must also establish that the unnamed party shares a commonality of interest with parties named in the administrative charge. Courts consider the following four factors to assess commonality of interest: (1) whether the complainant could reasonably have ascertained the unnamed party's role at the time the charge was filed; (2) whether the named and unnamed parties share such similar interests that including the unnamed party would be unnecessary; (3) whether the unnamed party's absence from the administrative proceedings caused actual prejudice; and (4) whether the unnamed party has indicated to the complainant that their relationship is to be conducted via the named party. Schafer, 903 F.2d at 252 n.7 (quoting Glus II, 629 F.2d at 251).

Defendants submit that Risser failed to exhaust administrative remedies appertaining Montiel by failing to name her as a party in the agency proceedings or to mention her at all in the agency charges. (Doc. 25 at 7-8). We agree. In his amended complaint, Risser alleges that, during the 2014-2015 school year, Montiel harassed him concerning classroom set-up and lesson plans. (Doc. 13 ¶ 33(i)). Risser also alleges that Montiel conducted unnecessary evaluations as a means of intimidating him. (Id. ¶ 33(j)). Yet Montiel's alleged conduct is nowhere referenced in Risser's *three* administrative charges.[5] (See Doc. 24-2).

Risser concedes that his administrative filings are silent as to Montiel. (Doc. 26 at 18-19). Risser relies on a decision of our sister court, Lowenstein v. Catholic Health East, 820 F. Supp. 2d 639 (E.D. Pa. 2011), in support of his request that we overlook his omission. (See id.). In Lowenstein, the court permitted plaintiff to proceed with his claims against an unnamed defendant because there was a factual question as to whether that defendant had received notice. 820 F. Supp. 2d at 646. Citing her "important role in the events at issue," the court emphasized that the unnamed defendant was the principal employee taking negative action toward the plaintiff. See id. at 642, 646. Risser's *allegata* do not sustain a similar conclusion. It is Castagneto and Crum—not Montiel—who feature prominently in the amended complaint *sub judice*. (See, e.g., Doc. 13 ¶¶ 29, 33(e), 33(o)-(p), 34, 41, 45). Hence, Lowenstein does not excuse Risser's failure to exhaust administrative remedies.

---

[5] The court observes that Risser deliberately excluded Crum from his second and third administrative charges in light of her departure as principal, but chose not to include the purported discriminatory actions of Crum's successor, Montiel. (See Doc. 24-2).

11

The agency filings are devoid of reference to Montiel or her alleged actions. Montiel was not on notice of a potential lawsuit against her in an individual capacity. See Schafer, 903 F.2d at 252. Therefore, we will dismiss Risser's claims against Montiel for failure to exhaust administrative remedies.

### 2. *Failure to Exhaust Harassment and Hostile Work Environment Claims*

A plaintiff generally must exhaust administrative remedies with respect to each of his claims, but a court may assume jurisdiction over claims not technically exhausted if they are reasonably within the scope of the complainant's charges and would be encompassed by the EEOC investigation. Mandel, 706 F.3d at 163; Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984). There must be a "close nexus" between the facts alleged in the administrative charge and any newly-raised claim. Hicks v. ABT Assocs., Inc., 572 F.2d 960, 967 (3d Cir. 1978); see also Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996). The relevant test is whether the alleged acts in the federal lawsuit are fairly encompassed within the scope of the prior agency charge and related investigation. Antol, 82 F.3d at 1295 (quoting Waiters, 729 F.2d at 237). In determining whether a claim is contemplated in an underlying charge, courts liberally interpret the administrative filing. Anjelino v. N.Y. Times Co., 200 F.3d 73, 94 (3d Cir. 1999) (quoting Hicks, 572 F.2d at 965).

Defendants contend that Risser's instant harassment and hostile work environment claims fall outside the scope of his administrative charges. (Doc. 25 at 8-9). Harassment and hostile work environment claims are closely connected. To establish a claim of hostile work environment, a plaintiff must show, *inter alia*, the

12

existence of unwelcome harassment that is so "severe or pervasive" that it alters the conditions of employment or creates an abusive working environment. Lowenstein, 820 F. Supp. 2d at 646-47 (citing Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667 (3d Cir. 1999)). Courts should construe agency charges as meeting exhaustion requirements if they contain terms that are interchangeable with those commonly used in hostile work environment charges, such as "'abusive,' 'hostile,' 'environment,' and 'atmosphere.'" Anjelino, 200 F.3d 73, 94-95 (citations omitted).

Risser's instant harassment and hostile work environment claims fall outside the scope of even the most deferential interpretation of his agency filings. The first two administrative charges focused almost exclusively on a specified number of classroom observations and performance evaluations. (See Doc. 24-2 at 3-7, 11-14). Most of these actions were associated with an ongoing investigation initiated by the superintendent, Castagneto. (See id.) The third charge addressed only Risser's termination on October 26, 2015. (Id. at 18-19). The charges do not mention Risser's work environment, the existence of an abusive atmosphere, or any other language that could reasonably be interpreted as indicating harassment or a hostile work environment. See Barzanty v. Verizon Pa., Inc., 361 F. App'x 411, 414 (3d Cir. 2010) (nonprecedential) (citing Anjelino, 200 F.3d at 94-95). Risser's work environment is mentioned only in the context that the performance observations and reviews occurred in the school classroom. (See Doc. 24-2 at 5, 12, 17).

The gravamen of Risser's administrative charges is his assertion that defendants initiated performance reviews and an investigation either on account of his disability or in retaliation for his filing charges with the PHRC and EEOC. (See

13

id.) Risser's harassment and hostile work environment claims are not "fairly within the scope" of Risser's administrative charges or any investigation arising therefrom. Antol, 82 F.3d at 1295. Therefore, the court will dismiss Risser's harassment and hostile work environment claims in Counts I and II.

### 3. *Failure to Exhaust "New Facts"*

The Third Circuit has declined to adopt a *per se* exhaustion rule regarding events subsequent to the filing of an administrative charge. Robinson, 107 F.3d at 1024; Waiters, 729 F.2d at 237. Subsequent events may be fairly considered as encompassed within an earlier charge when the event falls within the scope of (1) the prior charge or (2) the ensuing agency investigation. Robinson, 107 F.3d at 1025 (quoting Waiters, 729 F.2d at 235). Discrete acts that occur after a complainant receives a right-to-sue letter do not qualify under this rule. See Waiters, 729 F.2d at 237; see also Green v. Postmaster Gen., 437 F. App'x 174, 178 (3d Cir. 2011) (nonprecedential).

Defendants assert that Risser cannot include "new and distinct facts" in his amended complaint which were not first alleged in the administrative charges. (Doc. 25 at 8). Defendants challenge three particular allegations: (1) that Risser's disability was disclosed to students and faculty at a school assembly; (2) that he was forced to resign from a coaching job; and (3) that defendants intentionally hindered his efforts to seek new employment. (Id. at 9). Defendants aver that these "new facts" are improperly offered in further support of Risser's discrimination claim. (Id. at 8-9).

Two of these "new facts" fall within the ambit of Risser's prior administrative charges. The junior varsity coaching job was for the 2014-2015 school year. (Doc. 13 ¶ 49). Risser does not specify when he sought other teaching jobs, but he was unemployed from October 26, 2015 until September 12, 2016 when he was reinstated by the School District's board of directors. (Id. ¶¶ 46, 50, 57). Both events predate the February 22, 2017 right-to-sue letter. (Id. at 22). Risser attributes these lost job prospects to the discriminating and retaliatory conduct described in his agency filings. (Id. ¶¶ 46-50; Doc. 24-2 at 13-14, 18-19). The loss of existing and potential future employment opportunities on account of defendants' actions falls squarely within the scope of the administrative charges.[6]

The only event alleged in the amended complaint that occurred after receipt of the final right-to-sue letter is the March 2, 2017 assembly at which defendants purportedly disclosed details of Risser's disability to students and faculty. (Doc. 13 ¶ 85). This event postdates Risser's final right to sue letter, (id. at 22), and thus "may [not] be fairly considered as encompassed therein." Robinson, 107 F.3d at 1025. We find that Risser has not exhausted his administrative remedies with regard to the alleged discrimination at the assembly. Risser's discrimination and retaliation claims will be dismissed to the extent they are premised on this event.

---

[6] Even if we were to accept defendants' arguments, both of these allegations are permissible expressions of damages suffered on account of the alleged discrimination and retaliation. (Doc. 13 ¶¶ 59, 62-63, 74, 77, 89, 92).

### B. Individual Liability Under the ADA

Title VII does not subject supervisory employees to individual liability. Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002) (citing Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (*en banc*)). The Third Circuit has acknowledged that this prohibition on individual liability extends to claims for damages under Title I of the ADA.[7] Koslow, 302 F.3d at 177-78. Therefore, Risser cannot maintain an action under Title I of the ADA against Castagneto and Crum in their individual capacities. The court will dismiss Risser's discrimination and retaliation claims against these defendants.

### C. Individual Liability Under the PHRA

Unlike the ADA, individuals may be held liable under the PHRA. See 43 PA. STAT. AND CONS. STAT. § 955. The PHRA makes it unlawful for "any person" to "aid, abet, incite, compel or coerce" or "attempt, directly or indirectly, to commit" any practice proscribed by the statute. Id. § 955(e). An employee is a "person" under the PHRA, and the statute expressly covers employees of "the Commonwealth or any political subdivision or board, department, commission or school district thereof." Id. § 954(a), (b). Courts have interpreted this statutory language to mean that the Pennsylvania legislature has waived its sovereign immunity for PHRA claims. Boone v. Pa. Office of Vocational Rehab., 373 F. Supp.

---

[7] Risser only cites to the ADA generally in his complaint. (Doc. 13 at 1 (citing 42 U.S.C. § 12101)). Title I of the ADA prohibits certain employers from discriminating against an otherwise qualified individual with a disability, on account of that disability. Koslow v. Commonwealth of Pa., 302 F.3d 161, 177 (3d Cir. 2002).

16

2d 484, 496 (M.D. Pa. 2005) (citing City of Phila. v. Pa. Human Relations Comm'n, 684 A.2d 204, 208 (Pa. Commw. Ct. 1996); Mansfield State Coll. v. Kovich, 407 A.2d 1387, 1388 (Pa. Commw. Ct. 1979)). Accordingly, Risser's PHRA claims may proceed against Castagneto and Crum.[8]

### D. High Public Official Immunity

Pennsylvania common law recognizes the doctrine of absolute immunity for "high public officials." Smith v. Sch. Dist. of Phila., 112 F. Supp. 2d 417, 425 (E.D. Pa. 2000) (citing Lindner v. Mollan, 677 A.2d 1194, 1195-96 (1996)). High public official immunity

> is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.*

Heller v. Fulare, 454 F.3d 174, 177-178 (3d Cir. 2006) (quoting Matson v. Margiotti, 88 A.2d 892, 895 (Pa. 1952)). Pennsylvania courts have recognized that school superintendents qualify as high public officials. Smith, 112 F. Supp. 2d at 425 (citations omitted). However, this doctrine only shields defendants sued in their official capacities. Heller, 454 F.3d at 177-178 (quoting Matson, 88 A.2d at 895); see also Durham v. McElynn, 772 A.2d 68, 69 (2001). Defendants concede that this

---

[8] The individual defendants ostensibly raise qualified immunity as a defense to *all* claims against them. (See Doc. 25 at 16-18). The doctrine of qualified immunity does not apply to state law claims. Betz v. Satteson, No. 4:15-CV-00851, 2017 WL 1474275, at *32 (M.D. Pa. Apr. 25, 2017) (quoting Miller v. New Jersey, 144 F. App'x. 926, 929 (3d Cir. 2005)).

17

doctrine does not apply to Castagneto in her individual capacity. (Doc. 28 at 12). Because Risser disclaims all official capacity claims, (Doc. 26 at 22), defendants' motion invoking high public official immunity will be denied as moot.

## IV. Conclusion

Defendants' motion (Doc. 24) will be granted in part and denied in part. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: November 22, 2017